## THE WAVERLY.[1]

### THE ANGLIA.

HENDERSON et al. v. THE WAVERLY, THE A. C. CHENEY, THE GOODWIN, AND THE ASSISTANCE.

WILLIAMSON et al. v. THE ANGLIA, THE A. C. CHENEY, THE GOODWIN, AND THE ASSISTANCE.

(*District Court, E. D. New York. March 8, 1890.*)

1. COLLISION — BETWEEN STEAM-SHIPS — CROSSING COURSES — DUTY OF VESSEL HAVING RIGHT OF WAY.
    When two steam-ships are on crossing courses, the vessel having the other on her port hand is not in fault for keeping her wheel steady, and is not in fault for slackening her speed, when her whistles are not answered, and the approaching vessel is seen to be swinging as though to cross her bow.

2. SAME — WANT OF PROPER LOOKOUT.
    The steam-ship A. was being towed by three tugs across the mouth of the East river to Brooklyn. The steam-ship W., bound out of the East river, was on a course crossing that of the A., and had the latter on her starboard hand. The W. had no stationed lookout on board, and the A. was not seen by her master or pilot until a man on a tug along-side called attention to the whistling of the A.'s tugs. It was then too late to avoid the collision which ensued. *Held*, that the cause of the collision was the neglect of the W. to keep a lookout.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

In Admiralty. Cross-actions for damages by collision.

*Wing, Shoudy & Putnam,* for the Anglia.

*Wheeler, Cortis & Godkin,* for the Waverly.

*R. D. Benedict,* for steam-tugs Cheney and Goodwin.

*Biddle & Ward,* for steam-tug Assistance.

BENEDICT, J. Considering that the collision out of which these actions arose occurred in the day-time, between the steam-ship Waverly, a loaded steam-ship bound to sea under her own steam, with a pilot on board, and the steam-ship Anglia, a steam-ship without steam, and without cargo, at the time showing the signal of the Anchor Line, and being towed by three tugs, one on each quarter along-side, and the third on a hawser, from the North river to the Anchor Line piers, just south of Wall-Street ferry, in the East river, (which is a broad expanse of water, narrowed at a single point, by Diamond reef, to the width of some 800 feet;) and the evidence warranting the conclusion that, if those on the Waverly had observed the Anglia as soon as she might have been seen, the Waverly would have passed between the Anglia and the New York shore without the possibility of collision; and it appearing that there was no stationed lookout on board the Waverly, and that the Anglia was not seen by the pilot or the master on the bridge until a man on a tug along-side the Waverly called their attention to the whistling of the Anglia's tugs, at which time the Waverly was so near the Anglia that, although the engine of the Waverly was at once ordered to stop, and full speed astern, she struck the Anglia on her port side,—it must be held that the neglect of the Waverly to keep a look-out was the cause of the collision that ensued.

As to the Anglia, the charge that she was in fault for not starboarding cannot be sustained. The vessels were on crossing courses; and, as the Waverly had the Anglia on her starboard side, by the rules it was the duty of the Waverly to avoid the Anglia, and the duty of the Anglia to keep her course, as she did. The other charge, that the Anglia was in fault for not keeping up her speed, must, in view of the fact that the whistling of her tugs had not been answered, be held no fault, especially as the Waverly was seen to be swinging towards Brooklyn. In the case of *The Columbia,* 25 Fed. Rep. 844, the circuit court, reversing the decision of this court, held it to be the duty of a privileged vessel, seeing the other vessel to be persistent in going on, and not responding to whistles from the privileged vessel, to slacken speed, and, if necessary, to stop and reverse. The rule applied in the case of *The Columbia* by the circuit court is applicable here, and compels a decision in this case adverse to the claim of the Waverly that it was fault in the Anglia's tugs to stop and reverse. Let a decree be entered in the case of *Williamson* dismissing the libel, with costs; and, in the case of *Henderson,* let a decree be entered in favor of the libelant, with a reference to ascertain the damages.